**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**CHRISTOPHER ALTMAN,**

>  **Petitioner,**

**v.**                                                                 **Case No. 3:22cv21190-LC/MAF**

**STATE OF FLORIDA,**

>  **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On October 18, 2022, Petitioner Christopher Altman, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On April 10, 2023, Respondent filed an answer, ECF No. 11, with exhibits, ECF No. 12.  Petitioner filed a reply, with exhibits, on May 8, 2023.  ECF No. 14.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By information filed May 1, 2017, in Escambia County Circuit Court Case 2017-CF-1996, the State of Florida charged Petitioner Christopher Altman with three counts of sexual battery of a child twelve years of age or older, but less than eighteen, by a person in familial or custodial authority, contrary to section 794.011(8)(b), Florida Statutes.  Ex. A at 144-45.[1]  The offenses occurred between December 8, 2016, and April 6, 2017.  *Id.*

On July 14, 2017, Altman signed a written plea agreement reflecting he would enter a "straight up" guilty plea to the first two counts and the State would nolle prosequi the third count.  Ex. A at 150-54.  At a hearing that same day, the judge accepted the plea and deferred sentencing.  *Id.* at 81-88.  On October 23, 2017, the judge sentenced Altman to life in prison on Counts 1 and 2, and the State announced the nolle prosequi as to Count 3.  Ex. A at 114-25 (sentencing transcript), 155-62 (Order of Judgment and Sentence).

Altman appealed to the First District Court of Appeal (First DCA), assigned case number 1D17-5148.  Ex. A at 182.  His counsel filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Ex. C.  Altman did not file a pro se brief, although he had the opportunity to do so.  *See* Ex.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits, ECF No. 12, submitted with Respondent's answer, ECF No. 11.

D.  On August 21, 2018, the First DCA affirmed the case without a written opinion.  Ex. E; Altman v. State, 251 So. 3d 839 (Fla. 1st DCA 2018) (table).

On July 15, 2019, Altman filed a pro se Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. F at 7-24. On August 21, 2019, the state postconviction trial court found the motion facially and legally insufficient, and allowed Altman sixty (60) days to file an amended motion.  *Id*. at 36-38.  Altman filed an amended Rule 3.850 motion, *id*. at 50-76, and memorandum, *id*. at 77-85.  On October 28, 2019, the court directed the State to "show cause why relief should not be granted as to Defendant's claim on Ground One for failing to file a Motion to Withdraw Plea on the basis that his plea was rendered involuntary by counsel's affirmative assurance that the Court would impose a downward departure sentence if he entered an open plea."  *Id*. at 86-87.  The State filed a response on December 26, 2019.  *Id*. at 88-96 (exclusive of attachments).

On March 30, 2020, the court granted a limited evidentiary hearing on "Defendant's assertion that counsel was ineffective for failing to file a motion to withdraw his open plea which was rendered involuntary by affirmative misadvice that he *would* receive a downward departure sentence if he entered an open plea."  *Id*. at 148-49.  The hearing took place October 7, 2021, during which Altman and each of his former attorneys, David

Dunkerley and Casey Etheridge, testified. *Id*. at 214-305. By order rendered November 23, 2021, the court denied relief. *Id*. at 306-13.

Altman appealed to the First DCA, Ex. F at 367-69, and filed an initial brief, pro se, in case number 1D21-3879, Ex. G. The State filed an answer brief, Ex. H, and Altman filed a reply brief, Ex. I. On August 18, 2022, the First DCA per curiam affirmed the case without a written opinion. Ex. J; <u>Altman v. State</u>, 345 So. 3d 871 (Fla. 1st DCA 2022) (table). The mandate issued September 15, 2022. Ex. J.

On October 18, 2022, Altman filed his § 2254 petition. ECF No. 1. He raised four grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – No Motion to Withdraw Plea**: "Trial counsel rendered ineffective assistance for failing to file a motion to withdraw plea." *Id*. at 4.

(2) **IAC – Failure to Convey Open Plea Offer**: "Trial counsel rendered ineffective assistance for failing to convey an open plea offer." *Id*. at 5.

(3) **IAC – No Motion to Suppress**: "Trial counsel rendered ineffective assistance for failing to file a motion to suppress the confession." *Id*. at 7.

(4) **IAC – Sentencing Scoresheet**: "Trial counsel rendered ineffective assistance for failure to investigate the Defendant's sentencing scoresheet." *Id*. at 8.

On April 10, 2023, Respondent filed an answer, ECF No. 11, with exhibits. ECF No. 12. Petitioner has filed a reply, with exhibits. ECF No. 14.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

The Strickland test applies to IAC claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985).  When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id*. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'" *Id*. at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258 (1973)).  A defendant who enters a plea may not raise claims relating to alleged pre-plea deprivations of constitutional rights; rather, such a defendant may only attack the voluntariness of the plea by showing counsel's advice contravened McMann:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standard set forth in McMann.

Tollett, 411 U.S. at 267.  The U.S. Supreme Court has further explained:

> A plea of guilty and the ensuing conviction comprehend all of the
> factual and legal elements necessary to sustain a binding, final
> judgment of guilt and a lawful sentence. Accordingly, when the
> judgment of conviction upon a guilty plea has become final and
> the offender seeks to reopen the proceeding, the inquiry is
> ordinarily confined to whether the underlying plea was both
> counseled and voluntary. If the answer is in the affirmative then
> the conviction and the plea, as a general rule, foreclose the
> collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989); *see* Mabry v. Johnson,

467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent

plea of guilty made by an accused person, who has been advised by

competent counsel, may not be collaterally attacked."); Blackledge v. Allison,

431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his

lawyer, and the prosecutor at [the plea hearing], as well as any findings made

by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings.  Solemn declarations in open court carry

a strong presumption of verity.  The subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the record are wholly incredible.").

## Ground 1:  IAC – No Motion to Withdraw Plea

In his first ground, Petitioner Altman asserts his trial counsel provided

ineffective assistance "for failing to file a motion to withdraw his plea due to

an involuntary plea and a failed promise of a downward departure promised by Counsel Etheridge."  ECF No. 1 at 4.  As Respondent indicates, ECF No. 11 at 19, Altman presented a similar claim in state court, as the first ground in his amended Rule 3.850 motion, Ex. F at 53-55.  After setting forth the Strickland standard, including Hill, the state trial court denied the claim:

> Defendant's first claim is that counsel was ineffective for refusing to file a motion to withdraw his plea.  Defendant contends his plea was involuntary due to affirmative misadvice by counsel that he would receive a downward departure sentence.  Defendant alleges he timely requested that counsel file a motion to withdraw his plea, and counsel failed to do so. Defendant also asserts he would have proceeded to trial.
>
> The court convened an evidentiary hearing on this issue. Defendant was represented at the time of his plea by David Dunkerley and by Casey Etheridge at the time of his sentencing. Both were (and remain) Assistant Public Defenders.  Defendant, Mr. Dunkerley, and Ms. Etheridge all testified at hearing.
>
> Defendant testified that at the time he agreed to enter his plea, he had been told by Mr. Dunkerley that he was facing 17.5 to 30 years in prison, and that he believed he would get the 17.5-year sentence. [Ex. F at 218.] Based on his testimony, it appears that Defendant was confused regarding the legal definition of "downward departure," and thought he would be getting the minimum scoresheet sentence, and not an actual "downward departure." [*See* Ex. F at 220-21, 228, 230.]  Regardless, he indicated at evidentiary hearing that he did not know that he was facing a potential life sentence at the time of his plea and stated that he told Mr. Dunkerley on the day of his plea that he wanted to go to trial. [Ex. F at 219, 238-39.]  He stated that he first learned that he could withdraw his plea after he was sentenced to life in prison, and he contacted Ms. Etheridge to request that she file the motion, but she did not. [Ex. F at 219, 232.]

Upon questioning by the State, Defendant acknowledged that the State's evidence included three admissions that he had had sex with [the victim].  [Ex. F at 237.]  He also stated that on the day of his plea, "I did realize that day in court that I was facing a life sentence."  [Ex. F at 243.]

Mr. Dunkerley testified that he reviewed all of the evidence with Defendant, including his admissions.  [Ex. F at 246.]  He did not recall Defendant asking to go to trial and stated that he explained prior to Defendant's entry of the plea that he was facing a maximum of life in prison.   [Ex. F at 247-48.]  Mr. Dunkerley stated it was his strategy to have a risk assessment analysis done for Defendant, and to perhaps request a downward departure based on the need for specialized treatment, depending on the results of the evaluation.  [Ex. F at 248-50.]  He stated that he explained this strategy to Ms. Etheridge, but was adamant in his testimony that he has "never promised downward departure to any client. . . . There's no guarantees.   There's no promises."   [Ex. F at 250.]   He acknowledged that the State's use of a multiplier on the scoresheet was unanticipated by him initially, but that he discussed it with Defendant on the day of his plea.  [Ex. F at 252, 260.]   Following that discussion, he testified, Defendant concluded that "ultimately he wanted to enter the plea because he realized going to trial was just not going to be productive.  And there was so much evidence against us that was going to expose the judge to a lot more of the details of the case[.]"  [Ex. F at 252.]

Ms. Etheridge also testified that she explained to Defendant that she would be requesting a downward departure sentence, but that she did not promise him that he would receive a downward departure.  [Ex. F at 272-73.]  She stated that Defendant did not tell her prior to sentencing that he wanted to withdraw his plea.  [Ex. F at 273.]  She recalled that Defendant did say after sentencing that he wanted to withdraw his plea based on his dissatisfaction with the sentence.  [Ex. F at 274.]  However, she acknowledged that she did not file the motion, stating, "[T]hat's not a reason that we can legally file a motion for – to withdraw his plea."  [Ex. F at 274.]

Defendant has not shown that his counsel was deficient or that he was prejudiced. Based on the Court's review of the plea and sentencing hearing transcripts, and the testimony offered at evidentiary hearing, the Court does not find that Ms. Etheridge was ineffective for failing to file a motion to withdraw Defendant's plea, as it does not appear that a legal basis existed to support such a motion. The Court finds credible the testimony of Mr. Dunkerley and Ms. Etheridge that Defendant was aware that he was facing a life sentence and that he was not promised a downward departure sentence by either of his attorneys. The Court's conclusion is further bolstered by the plea and sentencing hearing transcripts, which show that Defendant was advised of his maximum potential sentence of life at the time.

Even if counsel had filed a successful motion to withdraw plea, the Court does not find that Defendant would have proceeded to trial. As aptly characterized by Mr. Dunkerley, it appears that the evidence against Defendant was "overwhelming." As a result, the Court finds credible Mr. Dunkerley's testimony that Defendant did not want to pursue a trial. Defendant has failed to demonstrate either deficient performance or prejudice, and he is not entitled to relief on the basis of this claim.

Ex. F at 308-11 (footnote omitted). On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. J. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278

F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the record references in brackets in the quoted portion of the order, above, support the state court's findings regarding the testimony of Altman, Dunkerley, and Etheridge.  The court particularly found credible the testimony of Dunkerley and Etheridge that Altman knew he faced a life sentence and that neither promised him a downward departure sentence. Ex. F at 248-51, 273.  The state postconviction trial court sits as the fact-finder and determines witness credibility in Rule 3.850 proceedings.  *See, e.g.*, Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850(d).  "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" Consalvo, 664 F.3d at 845 (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

In addition, as the state post-conviction trial court found, the transcripts of the plea and sentencing hearings show Altman was advised of his maximum potential sentence of life in prison.  Ex. A at 86, 120, 122-23.  The court also found credible Dunkerley's testimony that Altman did not want to pursue a trial.  Ex. J at 252.

Based on the foregoing, Petitioner Altman has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 2:  IAC – Failure to Convey Open Plea Offer

In his second ground, Petitioner Altman asserts his trial counsel provided ineffective assistance by "failing to convey an open plea offer."  ECF No. 1 at 5.  He contends that Dunkerley "falsely claimed that he went over each component of the plea agreement" and "denied giving false information about the time [Altman] faced during the time the plea agreement was signed."  *Id*. at 5-6.  He asserts that "[h]ad counsel shown defendant and properly conveyed the life sentence recommendation plea agreement he would have opted to trial."  *Id*. at 6.

As Respondent indicates, ECF No. 11 at 28, Altman raised a similar

claim as the second ground in his amended Rule 3.850 motion, *see* Ex. F at

56-58.   The state post-conviction trial court denied the claim, making the

following findings:

> Defendant's related second claim is that counsel failed to adequately explain the consequences of an open plea. Specifically, Defendant alleges he was not aware that he faced a potential life sentence when he entered an open plea. Defendant contends counsel told him he faced a 30-year maximum sentence.  Defendant claims that if he had known he faced a possible life sentence, he would have rejected the State's offer and proceeded to trial.  Defendant's claim is refuted by the record.

> It does appear that Defendant's counsel overlooked the doubling-of-points enhancement on Defendant's Criminal Punishment Code (CPC) scoresheet for an adult-on-minor sex offense.  However, when this was brought to counsel's attention, he discussed the matter with Defendant.  After consultation with counsel, Defendant expressly stated he understood he faced a possible life sentence on both counts.  With full understanding of the maximum possible sentence, Defendant stated he was satisfied with the advice and services of counsel, and he entered his guilty plea.  Defendant cannot now claim otherwise.  He is not entitled to relief on this basis.

Ex. F at 311 (footnotes omitted).   On appeal, the First DCA per curiam

affirmed the case without a written opinion.  Ex. J.  This adjudication on the

merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even

though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99;

Wright, 278 F.3d at 1254-55.   A review of the record supports the state

courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

Specifically, as indicated in the analysis of Ground 1, *supra*, the record supports the state postconviction trial court's findings that Dunkerley had overlooked the use of the multiplier on the scoresheet, but after it was brought to his attention, he and Altman discussed it and Altman still wanted to enter the plea. In particular, the record contains the following testimony by Dunkerley at the evidentiary hearing:

> Q. Before the defendant entered his plea, on the date of his plea, on July 14th, 2017, did the Court give you additional time to discuss the issues with the defendant?
>
> A. Yeah. I apparently had missed – Ms. Patterson had sent me an email indicating that she was going to use the multiplier for the sex offense on the scoresheet, and I wasn't aware of that. And I didn't see the scoresheet until the morning of sentencing, and so our scoresheet minimum was double what I had expected and what I had discussed in general with Mr. Altman. So that causes me right to go back and kind of reset and talk about it.
>
> But ultimately, the decision was the same. The evidence was just as overwhelming. While they had moved the minimum score on us, it didn't change the fact that we were going to go in and try to get a downward departure. It just meant that the Court had even more room in the downward departure realm to resentence. If it so chose to do that.
>
> Q. Did the defendant tell you that he wanted to still plea or that he wanted to go to trial when he realized his scoresheet was different?
>
> A. Well, I mean, he was hesitant with the change, but ultimately, he wanted to enter the plea because he realized going to trial was just not going to be productive. And there was so much evidence against us that was going to expose the judge to

a lot more of the details of the case and make our chances of getting a downward departure even less than it was – even more than it was.

Ex. F at 251-52.

In addition, Altman testified at the evidentiary hearing that, at least by the time he entered his plea in court, he knew he could receive a life sentence on each count charged and he was satisfied with his attorney's advice:

> Q. – when you're entering your plea, do you remember the Court saying, And do you understand, on each of the counts, you could be sentenced to life in prison?
>
> A. I do remember that. It is also to my understanding that a plea colloquy is supposed to be explained to a defendant through and throughout thoroughly, and the record has no evidence that the plea colloquy was established as it was supposed to be.
>
> Q. Well, just that question alone, do you remember the Court asking you that – the judge asking you that?
>
> A. Yes, ma'am, I do.
>
> Q. And do [you] remember telling the judge, yes, sir, in response to that?
>
> A. Yes, I do.
>
> Q. So you understood, at the time you were entering your plea, that you were facing life in prison?
>
> A. It was during that time that I realized, but before then, I didn't know. So I wasn't going to lie to the judge. But that moment, in that court date, on the 14th of July, is when I realized it. And so I couldn't lie to the judge.

Q.   And so when you realized that, did you have any questions for your attorney?  Did you want to speak with him further or were you upset with anything he had said to you.

A.  I was.  I was under a little bit of duress and didn't – I had no idea how I could handle the situation.

Q.   So do you remember, right after that question was asked, if you knew that you were facing life, and you said, yes, sir.  Right after that question was asked, do you remember the Court saying, Okay, is there anything your attorney's done that you didn't want him to do or anything you wanted him to do that he's failed to do?

A.  Yes, I do remember that.

Q.  And do you remember saying, no, sir?

A.  I do remember that.  I also understand that it was to be a guilty plea, and I pled no contest. . . .

Q.  Before we go into the guilty plea or the no contest plea, did you understand, I guess, just from what we covered in the last couple of questions I've asked, that you were facing life?

A.  Yes, ma'am.

. . . .

THE COURT:  Okay.  Is there anything that she asked you that you want to clear up to make sure that – you want to give any additional information or want to clear up with me?

THE DEFENDANT:   Yes.   The life sentence she mentioned, as I stated, I did realize that day in court that I was facing a life sentence.  Before that, I had no idea because I never did see the actual plea agreement.  I only saw the page that I had to sign.  Not only that, once I did get an understanding of a life sentence, it was to my understanding that once I took it to trial, I could be facing a life sentence.  I still didn't actually realize that I

was facing that with an open court plea agreement. I had no idea.

Ex. F at 240-43.

The transcript of the plea hearing, held July 14, 2017, reflects that Dunkerley indicated on the record that the use of the multiplier "was a surprise to both of us," him and Altman. Ex. A at 84. Shortly thereafter, a break was taken. *See id*. When the proceedings resumed, Dunkerley stated, "We're ready to proceed with the plea." *Id*. at 84-85. The following then transpired:

> THE COURT: All right, sir. You're still under oath. And do you enter your pleas freely and voluntarily?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. You can put your hand down. And do you understand the rights that you give up by entering a plea including the right to a trial by jury where the State would be required to prove your guilt beyond a reasonable doubt?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're giving up the right to cross-examine the State's evidence, present your own evidence, and testify on your own behalf.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Has anybody forced you or pressured you to enter a plea?
>
> THE DEFENDANT: No, sir.

THE COURT:  Are you satisfied with the advice given to you by your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you taken any alcohol, drugs, or medication that would affect your ability to understand what's going on?

THE DEFENDANT:  No, sir.

THE COURT:  Let the record reflect the defendant appears confident to the Court.

And do you understand on each of the Counts, you could be sentenced to life in prison?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Is there anything your attorney's done that you didn't want him to do or anything you wanted him to do that he's failed to do?

THE DEFENDANT:  Say it again, sir?

THE COURT:  Is there anything your attorney has done that you didn't want him to do?

THE DEFENDANT:  No, sir.

THE COURT:  Is there anything he has failed to do that you wanted him to do?

THE DEFENDANT:  No, sir.

THE COURT:  All right.  To each of the three Counts of sexual battery –

MS. AMBROSE [prosecutor]:  And, Judge, Ms. Patterson's offer – offer just calls for a guilty plea to Counts 1 and 2 and

Count 3 will be nolle prossed at sentencing.

THE COURT:  Okay.

To Counts 1 and 2, each sexual battery in a familiar or custodial authority, each punishable by life, what is your plea, sir?

MR. DUNKERLEY:  No contest.

THE DEFENDANT:  No contest.

THE COURT:  Are you entering pleas because you believe it's in your best interest to do so?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  I'll accept your pleas, find they're freely, voluntarily, knowingly entered. I find a factual basis from the documents in the court file.

And then we have the violation of probation.

MS. AMBROSE:  And, Judge, the – Ms. Patterson's offer calls for a guilty plea.

THE COURT:  Oh.

MS. AMBROSE:  So if that's a deal breaker for Mr. –

MR. DUNKERLEY:  Oh, no.  It's not a deal breaker.  Sorry.

MS. AMBROSE:  Okay.

THE COURT:  Okay.

MR. DUNKERLEY:  We'll change that to a guilty plea.

THE COURT:  All right, sir.  Do you understand the offer from the State was conditioned on you entering a guilty plea?  So

– so what is your plea?

      THE DEFENDANT:  Guilty.

      THE COURT:  Okay.  All right.  I'll accept your guilty plea, find it's freely, voluntarily, and knowingly entered, find a factual basis.

Ex. A at 85-88.

Based on the foregoing, Petitioner Altman has not shown the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## <u>Ground 3</u>:  IAC – No Motion to Suppress

In his third ground, Altman asserts his trial counsel provided ineffective assistance by "failing to file a motion to suppress the confession."  *Id*. ECF No. 1 at 7.  As Respondent indicates, ECF No. 11 at 33, Altman raised a similar claim as the third ground in his amended Rule 3.850 motion, *see* Ex. F at 58-60.  The state post-conviction trial court denied the claim, making the following findings:

      Defendant's third claim is that his counsel failed to file a motion to suppress a confession that was purportedly obtained through coercive police conduct.  Specifically, Defendant contends his wife . . . was pressured into participating in a controlled call during which Defendant admitted to having sex with [the victim].

Defendant bears the burden of establishing a prima facie case based on a legally valid claim. *See* Brown v. State, 270 So. 3d 530, 531 (Fla. 1st DCA 2019), citing Valentine v. State, 98 So. 2d 44, 54 (Fla. 2012). Conclusory allegations are insufficient. *See* Brown, 270 So. 3d at 531. Defendant fails to allege any facts which would demonstrate that the controlled call was illegal or improper. The fact that [Defendant's wife] *does not recall* being given a choice whether to participate does not affirmatively establish any kind of coercion or improper police conduct which would warrant suppression of the phone call. The affidavit appended to Defendant's motion establishes that [Defendant's wife] did not want to implicate her husband in the sexual battery of [the victim]; however, she does not indicate that her cooperation was the product of any threats, force, or coercion by law enforcement which would warrant suppression.

Defendant was afforded an opportunity to cure facial insufficiency. In its prior order, the Court cautioned Defendant "that any allegation of prejudice in fact is 'strictly applied' and must be 'positive, specific, and factual.'" Richardson v. State, 677 So. 2d 43, 44 (Fla. 1st DCA 1996) (emphasis added). Defendant does not establish or even minimally allege that a motion to suppress would have been granted; therefore, he has not demonstrated prejudice, and he is not entitled to relief on this claim. *See* Oquendo v. State, 2 So. 3d 1001, 1006 (Fla. 4th DCA 2008), citing Nelson v. State, 977 So. 2d 710, 711 (Fla. 1st DCA 2008).

Ex. F at 311-12. On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. J. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as the state postconviction court explained, Altman's conclusory allegations are insufficient to establish his wife's cooperation with law enforcement resulted from threats, force, or coercion, such that would warrant suppression of his confession. *See* Ex. F at 58-60, 79-80. Further, as the state court also found, Altman attached an affidavit of his wife but that affidavit indicates only that she did "not recall or remember officer Sturgeon asking me or giving me an option in calling Christopher" and she "thought or felt like this was something [she] had or needed to do for evidence," but "was defiantly [sic] not something [she] wanted to do." Ex. F at 73. As the court found, the affidavit does not state that "her cooperation was the product of any threats, force, or coercion by law enforcement which would warrant suppression she was coerced." Ex. F at 312.

In addition, the written plea agreement signed by Altman specifically indicates that "[t]he arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea." Ex. A at 150. The written plea agreement also indicates, among other things, that Altman understood the agreement and the rights he waived, all terms had been explained to him, he had "reviewed the facts of [his] case with [his] attorney and [he] agree[d] and stipulate[d] there are

sufficient facts available to the State to justify [his] plea," and he is "satisfied with the attorney's advice and services." *Id*. at 151; *see id*. at 153.  *See* Blackledge, 431 U.S. at 74-74; Tollett, 411 U.S. at 267; *see also, e.g.*, Stano v. State, 520 So. 2d 278, 279-80 (Fla. 1988) (affirming summary denial of Rule 3.850 motion and agreeing with trial court's finding:  "Once the Defendant enters a plea of guilty before this Court, and assures the Court under oath that the plea is voluntary, the Court will not go behind the plea. The plea cuts off inquiry into all that precedes it.  The Defendant is barred from contesting events happening before the plea.").

Based on the foregoing, Petitioner Altman has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Ground 4:  IAC – Sentencing Scoresheet

In his fourth ground, Petitioner Altman asserts his trial counsel provided ineffective assistance by failing "to investigate the Defendant's sentencing scoresheet."  ECF No. 1 at 8.  As Respondent indicates, ECF No. 11 at 39, Altman raised this claim as the fourth ground in his amended Rule 3.850 motion, *see* Ex. F at 60-62.  The state court denied the claim:

Defendant's fourth claim is that his counsel failed to adequately represent him and investigate the points on his CPC scoresheet. Defendant contends that counsel "falsely calculated" his scoresheet prior to meeting with him and concludes that counsel's failure to "investigate and be conversant of the sentencing scoresheet was deficient."

As noted previously, counsel candidly admitted that he had not anticipated the doubling of Defendant's points for adult-on-minor sexual battery. Defendant was given the opportunity to confer with counsel, knowing that counsel had made such an oversight. After such consultation, Defendant acknowledged he faced possible life sentences under the properly calculated scoresheet, and proceeded to enter his plea.

Defendant stated he was satisfied with the advice and services of his attorney, knowing full well that counsel had initially overlooked the scoresheet enhancement. Defendant cannot know go behind his sworn statement during the plea colloquy, particularly where the record conclusively demonstrates he was aware of the facts underlying his present claim. *See* Stano v. State, 520 So. 2d 278 (Fla. 1988).

Ex. F at 312-13 (footnotes omitted). On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. J. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

As explained in the analysis of Grounds 1 and 2, *supra*, and as the state postconviction court explained, Altman's attorney, David Dunkerley, had initially overlooked the use of the multiplier on the scoresheet, but after

it was brought to his attention during the plea hearing, he and Altman discussed it and Altman still wanted to enter the plea.  Altman signed the written plea agreement that indicated he was satisfied with his attorney, Ex. A at 151, 153, and he also indicated during the plea hearing – after he had seen the multiplier on the scoresheet – that he was satisfied with Dunkerley's advice and services, Ex. A at 85-86.  As the state postconviction trial court concluded, Altman cannot go behind his sworn statements, particularly where the record shows he was aware of the facts underlying his claim.  *See, e.g.*, Blackledge, 431 U.S. at 74-74; Tollett, 411 U.S. at 267; Stano, 520 So. 2d at 279-80.

Based on the foregoing, Petitioner Altman has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Conclusion

Petitioner Altman is not entitled to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability. The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 7, 2023.

**S/  Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**